[Civ. No. 7816. First Appellate District, Division Two.—March 24, 1931.]

In the Matter of the Estate of THOMAS A. KELLY, Deceased. IRIS MACPHERSON, Respondent; MRS. D. McF. STIRLING et al., Appellants.

Clarence E. Todd and A. V. Dalrymple for Appellants.

J. H. Sapiro and Robert P. Cahen for Respondent.

SPENCE, J.—This is an appeal from an order granting the petition of respondent Iris MacPherson for partial distribution.

The property involved is a diamond ring. The argument for reversal of the order is based entirely upon appellants' construction of the terms of the will. The testator left an olographic will providing that his money was to be "divided between" his brothers and sisters; that his bonds were to be "divided between" his nieces, Hazel Stirling and Iris Macpherson, and then follows the provision in question, "Let Iris and Hazel shake dice for the diamond ring." Following the testator's death and before the dice had been shaken, Hazel died leaving an olographic will providing, "I want my half of the diamond ring . . . to go to my mother, Elizabeth A. Stirling," (one of the appellants herein). The court ordered the ring distributed to respondent Iris Macpherson upon her petition for partial distribution stating as follows: "The intention of the testator was that Iris or Hazel should have the ring. He had no intention to give each of the girls a share in the ring. The estate in the ring never passed to the two girls. Hazel died before the ring was disposed of and the only person to take the ring is Iris."

Appellants contend that upon the death of the testator the title to the ring became vested in Iris and Hazel as tenants in common and that the court erred in granting partial distribution of the ring to Iris as the interest of Hazel had not been divested. In support of their position appellants cite *Estate of Hittell,* 141 Cal. 432 [75 Pac. 53], and *Estate of Murphy,* 167 Cal. 63 [137 Am. St. Rep. 110, 106 Pac. 230], and argue that no right of survivorship existed as a tenancy in common and not a joint tenancy was created. Under the terms of the will in the present case we are of the opinion that the authorities cited are inapplicable and that there is no merit in appellants' contentions.

The provision of the will in question was rather novel. We have found no authorities directly in point and must rely upon general principles in determining its proper construction. It is a cardinal rule in the interpretation of a

will that it is to be construed according to the intention of the testator (Civ. Code, sec. 1317), and to this rule, all auxiliary rules of construction and presumptions should be subordinated. (*Estate of Blake,* 157 Cal. 448, 458 [108 Pac. 287].) Section 1317 of the Civil Code provides: "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its fullest extent, it must have effect as far as possible." What was the intention of the testator here? He obviously intended to make a bequest of the ring to one person only, namely either Iris or Hazel, but not to both. It was his further intention that chance should determine which one of the two nieces should receive the ring. In our opinion the testator had no intention that Iris and Hazel should become vested at any time with undivided interests in the ring either as joint tenants or as tenants in common. His intention could not have effect to its fullest extent as the determination by chance had not been made prior to Hazel's death, but his primary intention that either one or the other of the two nieces should have the ring could still be given effect by distributing the ring to the survivor. By its order granting partial distribution to respondent, the trial court correctly construed the will so that the intention of the testator would "have effect as far as possible". (Civ. Code, sec. 1317.)

The order appealed from is affirmed.

Sturtevant, J., and Nourse, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 23, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 21, 1931.